# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### TYLER DIVISION

NEW BEGINNINGS HOUSTON, *et al.*,            §
                                             §
              Plaintiffs,                    §
                                             §
v.                                           §            Case No. 6:19-CV-177-JDK
                                             §
LONNIE CLUCK, *et al.*,                      §
                                             §
              Defendants.                    §

## ORDER GRANTING IN PART AND DENYING IN PART
## MOTION TO DISMISS

This case arises out of Plaintiffs' attempt to convert a vacant nursing home in Canton, Texas, into a homeless shelter. Defendants, the City of Canton and various City officials, have refused to grant Plaintiffs the necessary permits and approvals. Plaintiffs sued, asserting violations of the United States Constitution, the Texas Constitution, and Texas law. Defendants now move to dismiss the complaint in part. Docket No. 28. As explained below, the Court grants-in-part and denies-in-part Defendant's motion.

## I.      FACTUAL BACKGROUND

Plaintiffs are New Beginnings Houston, which is the assumed name of New Beginnings Fellowship Church of Houston, Texas, Inc.;[1] Covenant Community of New Beginnings – Canton ("Covenant Community"), an organization "established by and [] affiliated with New Beginnings Houston Fellowship Church of Houston, Texas, Inc."; and Joe Donalson, a member of Covenant Community. Docket No. 19 at pp. 1–3. Two other members of Covenant Community have

---

[1] The Second Amended Complaint states that New Beginnings Houston "is a registered subsidiary of New Beginnings Fellowship Church of Houston, Texas, Inc." Docket No. 19 at p. 1. But in responding to Defendants' motion to dismiss, Plaintiffs submitted a Certificate of Filing with the Texas Office of the Secretary of State indicating that New Beginnings Houston is the "Assumed Name" of New Beginnings Fellowship Church of Houston, Texas, Inc. Docket No. 38-1.

intervened as Plaintiffs.  *See* Docket Nos. 22-1; 24-1.

New Beginnings Houston is a religious organization that "believe[s] and follow[s] the teachings of Jesus Christ, including the precepts set forth in the Holy Bible, Matthew 25:35 (providing the correct way to worship God is by feeding, clothing, and providing shelter to the needy)."  *Id*. at pp. 7–8.  Prior to 2017, its members conducted most of their activities in Houston. But after Hurricane Harvey in 2017, New Beginnings Houston sought additional space to minister to the homeless.  It eventually purchased a vacant, 110-bed nursing home facility in Canton with the intention of using it as a homeless shelter.  *Id*. at p. 8.

From the beginning, Plaintiffs faced resistance from Defendants and Canton residents. Following an inspection, Defendants refused to issue the necessary occupancy permits, citing improper wiring, black mold, and an inadequate sprinkler system, among other problems. *Id*. at pp. 10–11.  Later, Defendants issued a notice of intent to condemn the facility for failing to comply with Canton City Ordinance 2015-10, an ordinance adopted in June 2015 and modeled after the International Property Maintenance Code.  *Id*. at pp. 14–17.  Defendants asserted that the facility presented health and safety concerns and that it was not entitled to any "grandfathering under earlier ordinances" because Plaintiffs intended to use the facility in a new and different way. *Id*. at p. 18.   Plaintiffs allege that neighboring property owners also opposed them.  *Id*. at p. 20.

An evidentiary hearing was held before the City Council, presided over by Defendant Lou Ann Everett, the Mayor of Canton.  *Id*. at p. 17.  Plaintiff Donalson testified about Plaintiffs' efforts "to render the property habitable," explained that the facility "had been approved for occupancy as late as 2014," and asked for "an accommodation" allowing Plaintiffs to remedy any truly unsafe condition that was "economically feasible."  *Id*. at pp. 24–25.  Following the hearing, the City Council and Mayor "voted to approve the condemnation notice."  *Id*. at p. 25.

2

Plaintiffs allege that Defendants' reasons for condemning the property are "pretextual." *Id.* at 12. According to Plaintiffs, Defendants' "true intent" is to "invidiously discriminate against Plaintiffs and inhibit Plaintiffs' religious activities," to protect "surrounding property owners [who believe] that the facility lowers their property values," and "to prevent the facility from ever opening up again as either a nursing home or low income housing unit." *Id.* at pp. 12–13, 18–20. Plaintiffs believe that Defendants want to "place a lien on Plaintiffs' property and sell [it] at public option . . . at a steep discount" to private developers. *Id.* at pp. 18–19.

On March 29, 2019, Plaintiffs brought this lawsuit, alleging that Defendants' conduct violates their constitutional rights and Texas law.[2] Defendants move to dismiss all of the claims except two—Counts 5 and 6. Docket No. 28.

## II.    LEGAL BACKGROUND

Under Federal Rule of Civil Procedure 12(b)(1), a party may seek dismissal of an action for lack of subject matter jurisdiction. In evaluating a motion to dismiss under Rule 12(b)(1), a court may consider the complaint alone, the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

Under Rule 12(b)(6), a party may seek dismissal for failure to state a claim upon which relief can be granted. In reviewing a Rule 12(b)(6) motion, a court must accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff. *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007). While a court must view the pleadings in a light favorable to the plaintiff, the court should not strain to find inferences favorable to the plaintiff and should not accept conclusory allegations, unwarranted deductions, or legal

---

[2] Plaintiffs filed this lawsuit in state court, but Defendants timely removed it on April 29, 2019. *See* Docket No. 1.

conclusions.  *See R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005).  In other words, "[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."  *Fernandez–Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993).  Generally, when ruling on a motion to dismiss under Rule 12(b)(6), a court may not look beyond the pleadings.  *Cinel v. Connick*, 15 F.3d 1338, 1341 (5th Cir. 1994).  The court may, however, refer to matters of public record, as well as to documents attached to the complaint or incorporated into the complaint by reference.  *Id.* at 1343 n.6; *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (explaining that when reviewing a dismissal under Rule 12(b)(6), the court may consider: (1) the pleadings and any attachment to the pleadings; (2) documents incorporated into the complaint by reference; and (3) documents that a defendant attaches to its motion to dismiss if those are referred to in the plaintiff's complaint and are central to the plaintiff's claim).

### III.    ANALYSIS

Defendants move to dismiss Counts 1, 2, 3, 4, and 7.  Defendants' motion does not address Count 5, which alleges a denial of Plaintiffs' right to a religious accommodation, or Count 6, which seeks injunctive relief.

### A.

Defendants first argue that Plaintiffs lack standing to assert Count 1, which alleges a violation of the Takings Clause of the Fifth Amendment of the U.S. Constitution.  According to Defendants, it is undisputed that the owner of the property at issue is New Beginnings Fellowship Church of Houston, Texas, Inc., and "that entity is not a party in this proceeding." Docket No. 28 at 2–3.  Defendants therefore seek dismissal of Count 1 under Rule 12(b)(1).

Plaintiff New Beginnings Houston, however, is the same entity as New Beginnings

Fellowship Church of Houston, Texas, Inc.  Although the complaint is vague on this point, Plaintiffs later filed a Certificate of Filing from the Office of the Secretary of State of Texas, which plainly states that "New Beginnings Houston" is an "Assumed Name" of "New Beginnings Fellowship Church of Houston, Texas, Inc."  Docket No. 38-1.  Defendants do not argue otherwise. Accordingly, the Court denies Defendants' request to dismiss Count 1 for lack of standing.  *See, e.g., Cliff Food Stores, Inc. v. Kroger, Inc.*, 417 F.2d 203, 206 (5th Cir. 1969); *EOG Res., Inc. v. Cedar Strat Corp.*, 2009 WL 10693881, at *4 (S.D. Tex. Apr. 27, 2009) ("The Fifth Circuit has recognized that assumed names are not separate entities from their parent corporations.").

**B.**

Defendants also move to dismiss Count 1 under Rule 12(b)(6).  That count alleges that the City's adoption of Ordinance 2015-10 and its efforts to enforce the Ordinance against Plaintiffs' facility constitute "an inverse condemnation" in violation of the Takings Clause.[3] Docket No. 19 at pp. 29–32.  Defendants argue that Plaintiffs have not pled a takings claim.  The Court agrees.

The Takings Clause provides:  "[N]or shall private property be taken for public use, without just compensation." U.S. Const., amend. V.  The Supreme Court has interpreted this provision to prohibit both "a direct appropriation of property" and a "regulatory taking"—"a restriction on the use of property that [goes] 'too far.'"  *Horne v. Dep't of Agriculture*, 135 S. Ct. 2419, 2427 (2015) (quoting *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 415 (1922)).  Here, Plaintiffs attempt to

---

[3]  The Takings Clause of the Fifth Amendment was made applicable to the states through the Fourteenth Amendment. *Chicago, B. & Q.R. Co. v. Chicago*, 166 U.S. 226, 258 (1897); *see also Murr v. Wisconsin*, 137 S. Ct. 1933, 1942 (2017).  The Supreme Court has explained that an "inverse condemnation" is "a shorthand description of the manner in which a landowner recovers just compensation for a taking of his property when condemnation proceedings have not been instituted." *United States v. Clarke*, 445 U.S. 253 (1980) ("As defined by one land use planning expert, '[i]nverse condemnation is "*a cause of action against a governmental defendant* to recover the value of property which has been taken in fact by the governmental defendant, even though no formal exercise of the power of eminent domain has been attempted by the taking agency."'") (emphasis added) (quoting D. Hagman, Urban Planning and Land Development Control Law 328 (1971)).

plead a regulatory taking.  To plead a claim of *per se* regulatory taking, a plaintiff must "allege[] facts showing that the regulation (1) results in a permanent physical invasion of property or (2) deprives a property owner of all economically beneficial use of his land."  *Yur-Mar, L.L.C. v. Jefferson Parrish Council*, 451 F. App'x 397, 400 (5th Cir. 2011) (citing *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 538 (2005)).  Plaintiffs plead no facts suggesting either of these two categories apply, so they have not stated a claim of *per se* taking.  *See id.*[4]

A three-factor balancing test applies to all regulatory takings that are not *per se* takings. *See id.* (citing *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 124–25 (1978)).  Those factors are:  (1) the "economic impact of the regulation," (2) the "extent to which the regulation has interfered with distinct investment-backed expectations," and (3) "the character of the government action."  *Penn Central*, 438 U.S. at 123.  Notably, a regulation imposing "some adverse effect on economic value will be tolerated in the interest of promoting the health, safety, welfare, or morals of a community."  *Tex. Manufactured Hous. Ass'n, Inc. v. City of Nederland*, 101 F.3d 1095, 1106 (5th Cir. 1996).  And "land-use restrictions or controls to enhance the quality of life by preserving the character and desirable aesthetic features of a city are not generally takings."  *Yur-Mar, L.L.C.*, 451 F. App'x at 400 (internal quotation marks omitted).

Applying the *Penn Central* factors here, the Court holds that Plaintiffs have not stated a regulatory takings claim.  First, by Plaintiffs' own allegations, the City's enforcement of Ordinance 2015-10 had no economic impact on Plaintiffs' property because the Ordinance was already in

---

[4] In responding to Defendants' motion to dismiss, Plaintiffs suggest that enforcing Ordinance 2015-10 here would deprive them of "all of the potential economic uses" of their property.  Docket No. 38 at 9–10.  But they have not made that allegation in their complaint, focusing instead on the inability to use the facility as a nursing home despite its failure to comply with health and safety regulations.  In any event, the argument is unavailing here because the Ordinance was in effect when Plaintiffs purchased the facility.  As the Supreme Court explained in *Lucas v. S.C. Coastal Council*, regulations do not violate the Takings Clause if they "inhere in the title itself, in the restrictions that background principles of the State's law of property and nuisance already place upon land ownership."  505 U.S. 1003, 1029 (1992).  Indeed, condemnation of public nuisances is specifically contemplated under *Lucas* as a permissible exercise of the government's "power to abate nuisances that affect the public generally."  *Id.*

effect when Plaintiffs purchased the facility.  Docket No. 19 at pp. 8–9, 30 (acknowledging that the City adopted the Ordinance in 2015 and that Plaintiffs purchased the property in 2017).  *See, e.g., Da Vinci Inv., Ltd. P'ship v. City of Arlington, Texas*, 747 F. App'x 223, 228 (5th Cir. 2018) (reasoning that no compensable taking had occurred because the "zoning and allowable uses of the property never changed" as a result of the government's actions); *Hackbelt 27 Partners, L.P. v. City of Coppell*, 661 F. App'x 843, 850 (5th Cir. 2016) (holding there had been no "adverse economic impact" as a result of the City's denial of a rezoning application because the property remained usable for its original zoning purpose); *see also Yur-Mar, L.L.C.*, 451 F. App'x at 400–01.

Nor did Ordinance 2015-10 interfere with Plaintiffs' reasonable "investment-backed expectations" since the Ordinance was "in place when such investments were made." *Da Vinci Inv., Ltd. P'ship*, 747 F. App'x at 229.  And, finally, Plaintiffs have not alleged that the character of the government action here—enforcement of Ordinance 2015-10—suggests a taking.  As the Supreme Court held in *Penn Central*, "[a] 'taking' may more readily be found when the interference with property can be characterized as a physical invasion by government than when interference arises from some public program adjusting the benefits and burdens of economic life to promote the common good."  438 U.S. at 124 (citation omitted).  Here, Plaintiffs do not allege a physical invasion by Defendants, but rather an attempt by City officials to enforce a health and safety ordinance in force at the time Plaintiffs purchased the facility.  *See id*. at 125 (upholding multiple land-use regulations that promoted the "health, safety, morals, or general welfare" of the public).

Plaintiffs argue that enforcing Ordinance 2015-10 to a facility built in 1974 is nonetheless a taking under *United States v. Carlton*, 512 U.S. 26 (1994), and *Stop the Beach Renourishment,*

*Inc. v. Fla. Dep't of Envtl. Prot.*, 560 U.S. 702 (2010)—when those cases are "read together." Docket No. 38 at 10–11. *Carlton*, however, addresses the legality of a retroactive tax law under a due process challenge and is inapposite here. *Carlton*, 512 U.S. at 35. And nothing in *Stop the Beach Renourishment* prohibits a city from enforcing a health and safety ordinance to facilities built before the ordinance were adopted. *See* 560 U.S. at 733.

Because the complaint does not allege a claim under the Takings Clause, the Court grants Defendants' motion to dismiss Count 1 under Rule 12(b)(6).

## C.

Defendants also move to dismiss Counts 2 and 3 for failure to state a claim. Count 2 alleges that the City engaged in "impermissible selective enforcement and prosecution of [Ordinance 2015-10]." Docket No. 19 at pp. 32–34. And Count 3 alleges that Defendants denied Plaintiffs the "equal protection of the laws" by allowing other property owners to occupy "non-conforming buildings and improvements." *Id*. at pp. 34–36. Defendants argue that these claims must be dismissed because Plaintiffs fail to identify "a similarly situated other" with which to compare their own alleged mistreatment. Again, the Court agrees.

Both Counts 2 and 3 require Plaintiffs to allege that they were treated differently from others similarly situated. The Fifth Circuit has recognized that a claim of selective enforcement is a type of equal protection claim, and requires plaintiffs to plead and prove "(1) that they were intentionally treated differently from others similarly situated, (2) that there is no rational basis for the difference in treatment, and (3) that the 'government official's acts were motivated by improper considerations, such as race, religion, or the desire to prevent the exercise of a constitutional right.'" *Mary v. Brister*, 2019 WL 2303825, at *1 (E.D. La. May 30, 2019) (quoting *Bryan v. City of Madison, Miss.*, 213 F.3d 267, 277 (5th Cir. 2000), and *Vill. of Willowbrook v. Olech*, 528 U.S.

562, 564 (2000)).  Similarly, to state an equal protection claim brought by a class of one, a plaintiff must "allege[] that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  *Vill. of Willowbrook*, 528 U.S. at 564.

Here, however, Plaintiffs have not identified a similarly-situated property owner treated differently by Defendants.  Plaintiffs allege that Defendants treated the following properties differently:  "numerous building and improvements—including another nursing home in far worse condition"; "the law office of Roxie Cluck, [which] is located in a converted residential structure that is not in compliance with [Ordinance 2015-10]"; and "two other nursing homes that don't comply with the [Ordinance]."  Docket No. 19 at pp. 33, 36.  Of these properties, only the law office has been described with any specificity.  But a law office is by its nature of a different size and function than a multi-bed nursing facility to be converted for use as a homeless shelter.  *See Hackbelt 27 Partners, L.P.*, 661 F. App'x at 848 (concluding two properties were not similarly situated because of their stark difference in size and proposed use); *see also Lindquist v. City of Pasadena, Tex.*, 656 F. Supp. 2d 662, 696 (S.D. Tex. 2009), *aff'd sub nom. Lindquist v. City of Pasadena Texas*, 669 F.3d 225 (5th Cir. 2012); *Brown v. Bd. of Commissioners Fifth Louisiana Levee Dist.*, 2017 WL 3911001, at *7 (W.D. La. Aug. 1, 2017), *aff'd*, 726 F. App'x 227 (5th Cir. 2018).  As for the other properties, the allegations about them are conclusory, fail to provide any identifying features, and lack detail about how the facilities function in spite of violating Ordinance 2015-10.  As such, these properties cannot support Plaintiffs' equal protection claims.  *See, e.g., Fernandez–Montes*, 987 F.2d at 284 ("Conclusory allegations . . . will not suffice to prevent a motion to dismiss.").

Because Plaintiffs ask for an opportunity to amend, however, the Court will dismiss Counts

2 and 3 without prejudice to allow Plaintiffs thirty days within which to amend the complaint and provide more specific allegations of similarly-situated owners treated differently by Defendants.

### D.

Defendants move to dismiss Count 4, which seeks a declaratory judgment that Ordinance 2015-10 is unconstitutional because it is an "ex post facto law" and because it "legislatively defines . . . Plaintiffs' building and improvements as a 'public nuisance.'"  Docket No. 19 at pp. 36–39.

Article I, Section 10 provides that "[n]o State shall . . . pass any Bill of Attainder [or] ex post facto Law."  The Supreme Court has long interpreted this provision to prohibit only statutes that "punish [a person] for a past offense."  *Reetz v. People of State of Mich.*, 188 U.S. 505, 510 (1903); *see Peugh v. United States*, 569 U.S. 530, 533 (2013).  Ordinance 2015-10 does not impose any kind of penalty or fine, and it does not address a past offense.  Rather, the Ordinance provides for a civil proceeding with civil remedies for failure to presently maintain a building in compliance. As the Fifth Circuit has held, that does not violate the Constitution.  *See, e.g., Crook v. Galaviz*, 616 F. App'x 747, 751 n.7 (5th Cir. 2015); *United States v. Young*, 585 F.3d 199, 204 (5th Cir. 2009).[5]

In alleging that Ordinance 2015-10 is also unconstitutional for "legislatively defin[ing]" their property as a nuisance, Plaintiffs cite the Fifth, Ninth, and Fourteenth Amendments.

---

[5]  Plaintiffs argue that the City seeks "fines and penalties" in the state court condemnation proceeding. Docket No. 38 at 6.  But only laws that impose criminal, rather than civil, penalties can violate the Ex Post Facto Clause.  *See Bevis v. City of New Orleans*, 686 F.3d 277, 280 (5th Cir. 2012).  To assist in this inquiry, the Supreme Court has articulated seven factors for determining whether a penalty described by the legislature to be civil in nature is sufficiently punitive in purpose or effect to trigger the protections of the Ex Post Facto Clause:

> (1) Whether the sanction involves an affirmative disability or restraint; (2) whether it has historically been regarded as a punishment; (3) whether it comes into play only on a finding of *scienter*; (4) whether its operation will promote the traditional aims of punishment-retribution and deterrence; (5) whether the behavior to which it applies is already a crime; (6) whether an alternative purpose to which it may rationally be connected is assignable for it; and (7) whether it appears excessive in relation to the alternative purpose assigned.

*Hudson v. United States*, 522 U.S. 93, 99, 118 S.Ct. 488, 493 (1997) (internal quotation marks and citation removed). Plaintiffs do not allege that the "fines and penalties" sought by Defendants in the condemnation proceeding satisfy these factors, and thus have not alleged that they are criminal, rather than civil, penalties.

Docket No. 19 at p. 37.   Nothing in those provisions, however, prohibits Defendants from identifying a property as a public nuisance through a duly-adopted city ordinance.  To the extent Plaintiffs are asserting a violation of their due process rights, the claim fails because Ordinance 2015-10 does not "legislatively define" their particular property as a nuisance.  Plus, as Defendants point out, Plaintiffs' own complaint describes in detail the due process they received before Defendants condemned their facility for violating the Ordinance.  Plaintiffs attended a hearing before the City Council, confronted witnesses, submitted their own evidence, and presented argument.  *Id*. at pp. 9–25, 28–29.  That is sufficient to comply with the Due Process Clause.  *See, e.g., Morrissey v. Brewer*, 408 U.S. 471, 488–89 (1972); *Goldberg v. Kelly*, 397 U.S. 254, 266–71 (1970).

### E.

Defendants also move to dismiss Count 7, which alleges a violation of "the prohibition against retroactive laws provided for and stated in Texas Constitution Article I, Section 16" and the "newly-enacted Texas Religious Liberty Law, Senate Bill 1978."  Docket No. 19 at pp. 43–44.

Article I, Section 16 of the Texas Constitution provides:  "No bill of attainder, *ex post facto* law, retroactive law, or any law impairing the obligation of contracts, shall be made."  The Texas Supreme Court has established a three-part test for determining whether a law violates this provision:  "'the nature and strength of the public interest served by the statute as evidenced by the Legislature's factual findings; the nature of the prior right impaired by the statute; and the extent of the impairment.'"  *Tenet Hosps. Ltd. v. Rivera*, 445 S.W.3d 698, 707 (Tex. 2014) (quoting *Robinson v. Crown Cork & Seal Co.*, 335 S.W.3d 126, 146 (Tex. 2010)).  Plaintiffs have not alleged facts to establish these three factors in their favor.  In fact, their allegations undercut their position by stating that Plaintiffs purchased the facility two years *after* the City adopted Ordinance

2015-10, which means that the Ordinance did not impair their property rights at all.  Docket No. 19 at 8–9; 14; *see Mbogo v. City of Dallas*, 2018 WL 3198398, at *7–8 (Tex. App.—Dallas 2018, pet. denied) (holding that city ordinances were not unconstitutionally retroactive in part because plaintiffs "purchased the property [knowing] 'the rules' governing" the city's regulation of their property); *see also, e.g.*, *Tenet Hosps. Ltd.*, 445 S.W.3d at 709.

As for the "newly-enacted Texas Religious Liberty Law, Senate Bill 1978," Plaintiffs refer to Texas Government Code § 2400.002, which states:  "Notwithstanding any other law, a governmental entity may not take any adverse action against any person based wholly or partly on the person's membership in, affiliation with, or contribution, donation, or other support provided to a religious organization."  Here, Plaintiffs' complaint does not allege that Defendants' enforcement of Ordinance 2015-10 or Defendants' later condemnation decision were based— either wholly or partly—on any "person's belief or action in accordance with the person's sincerely held religious belief or moral conviction."  *Id.*  Rather, the complaint alleges that Defendants were concerned about the safety of Plaintiffs' facility—its "mold and mildew," problematic "plumbing systems," dangerous "electric systems," unworking "climate systems," the lack of a "fire suppressant system," "possible asbestos," and a "fire rating on building components [that was] not to code."  Docket No. 19 at p. 17.  To be sure, Plaintiffs allege in a conclusory fashion that these concerns are "pretextual" and that Defendants seek "to invidiously discriminate against Plaintiffs and inhibit Plaintiffs' activities."  *Id.* at pp. 12, 18–20, 27–28.  But Plaintiffs provide no factual allegations to support these conclusions.  Rather, the only allegations about Defendants' motive to enforce the Ordinance against Plaintiffs' facility show the opposite—that Defendants are concerned the facility presents health and safety risks.  As the Fifth Circuit has explained, conclusory allegations "will not suffice to prevent a motion to dismiss."  *Fernandez–Montes*, 987

F.2d at 284.

Accordingly, the Court grants Defendants' motion to dismiss the claims based on Texas law.

**F.**

Finally, Defendants argue that Plaintiffs' claims against Defendants Lonnie Cluck, Brian Horton, Todd Peterson, and Lou Ann Everett in their official capacities should be dismissed because these claims are redundant of the claims against the City of Canton.  Plaintiffs do not address this argument in their response.  *See* Docket No. 38.

When a plaintiff "brings claims against both a public official . . . in his official capacity and the public entity for which he works, the claims 'essentially merge.'"  *Woolum v. City of Dallas, Texas*, 2019 WL 2604125, at *5 (N.D. Tex. May 24, 2019) (quoting *Turner v. Houma Mun. Fire & Police Civil Serv. Bd.*, 229 F.3d 478, 485 (5th Cir. 2000)).  Here, Plaintiffs' allegations against the four individual Defendants, who are all City officials, are the same as their allegations against the City of Canton.  Indeed, each factual allegation asserted against these individuals is specifically tied to their official functions working for the City.  *See* Docket No. 19 at 10, 12, 16–18, 22, 25, 28, 35, 38.  Accordingly, the Court grants Defendants' motion to dismiss the claims against Defendants Cluck, Horton, Peterson, and Everett in their official capacities. *See, e.g.*, *Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001); *Flores v. Cameron County, Tex.*, 92 F.3d 258, 261 (5th Cir. 1996).

**CONCLUSION**

The Court **GRANTS-IN-PART** and **DENIES-IN-PART** Defendants' motion to dismiss. Docket No. 28.  The Court **DENIES** the motion as to Count 1 based on a lack of subject matter jurisdiction.  The Court **GRANTS** the motion as to Counts 1, 2, 3, 4, and 7 and **DISMISSES** these

13

claims under Rule 12(b)(6).  The Court further **DISMISSES** the claims against Defendants Lonnie Cluck, Brian Horton, Todd Peterson, and Lou Ann Everett in their official capacities.

Plaintiffs may replead only Counts 2 and 3 within 30 days from the date of this Order to add specific allegations of similarly-situated owners treated differently by Defendants.

So **ORDERED** and **SIGNED** this **17th**  day of  **December, 2019.**

_____
JEREMY D. KERNODLE
UNITED STATES DISTRICT JUDGE